DOWNEY, Judge,
dissenting:
Chase Manhattan Bank held a mortgage that originally covered only lots 1 and 2, which were improved by an office building. The Trustees of C.I. Mortgage Group held a second mortgage and DeKalb Fulton Corporation held a third mortgage on the same lots. In consideration for the extension of the Chase and C.I. mortgages the parties entered into two “spreader agreements,” dated May, 1975, whereby lots 3 and 4 also became encumbered with the Chase and C.I. mortgages. However, prior to the effective date of the “spreader agreements” City Housing Corporation, as owner, executed an $8,000,000 wrap around mortgage encumbering all four lots. When the C.I. “spreader agreement” was recorded the title company inadvertently failed to include lots 3 and 4 in the property description. However, it seems clear from the record that the C.I. “spreader agreement” was also intended to encumber lots 3 and 4. Of some note is the fact that the Chase “spreader agreement” expressly provides Chase is to have a first mortgage lien on all four lots. The C.I. agreement is silent on the priority of that lien on the lots to which that mortgage was spread.
Chase sued to foreclose its mortgage against all four lots, naming C.I. and De-Kalb, among others, as defendants. C.I. sued to foreclose its mortgage only against lots 1 and 2. These suits were consolidated. DeKalb, which at this point was also the owner and holder of the $8,000,000 wrap around mortgage, filed a counterclaim, claiming a mortgage lien superior to both Chase and C.I. and seeking to foreclose against all four lots. In its counterclaim DeKalb alleged that the C.I. “spreader agreement” was intended to spread the encumbrance of C.I.’s mortgage to lots 3 and 4. Also, in opposition to C.I.’s motion for summary judgment, DeKalb filed the affidavit of Martin Gold, the lawyer who prepared the “spreader agreement.” Gold stated that the parties intended that the C.I. mortgage was to be extended to cover lots 3 and 4. However, oddly enough, in answering the counterclaim C.I. denied any interest in lots 3 and 4. As if that were not *325 enough, after the DeKalb counterclaim was filed, C.I. amended its complaint and once again sought foreclosure only against lots 1 and 2.
The record and appellant’s brief indicate that, since Chase claimed a first lien on all four lots by virtue of its mortgage and “spreader agreement,” C.I. made the tactical decision to claim second priority of its mortgage only against lots 1 and 2. C.I. intended to ultimately buy up Chase’s mortgage and thus be spared proving up its position vis-a-vis lots 3 and 4. Whatever strategy C.I. had in mind, when several days before trial Chase and DeKalb presented the court with a stipulation conceding DeKalb’s mortgage had first priority on lots 3 and 4, C.I. was left with no pleadings claiming a lien on lots 3 and 4 or seeking any relief against said property. Thus, when C.I. moved ore tenus, on November 3rd for leave to amend its pleadings to assert a claim to lots 3 and 4, it came too late. No doubt C.I. was surprised at the Chase/DeKalb stipulation conceding De-Kalb’s priority position as to lots 3 and 4; however, C.I. should have pleaded its own claims and not relied upon Chase’s success in proving its eventual priority. The record does not demonstrate that Chase and De-Kalb did anything in the litigation that was not perfectly proper. Therefore, I am unable to fault the trial judge in refusing to allow the proposed amendments at that late stage of this two and one-half year litigation. As this court said in Versen v. Ver-sen, 347 So.2d 1047 (Fla. 4th DCA 1977), the liberality in allowing amendments pursuant to Florida Rule of Civil Procedure 1.190 diminishes as the case progresses.
The real question presented on this appeal is the trial court’s refusal to allow appellant to amend under the circumstances of the case. However, appellant also contends the trial court erred in granting De-Kalb a summary judgment awarding it a first lien on lots 3 and 4. In my opinion, the final judgment was not the result of a summary judgment as regards lots 3 and 4, but the final resolution of all issues presented to the court on the question of priority of liens on said lots. The November 3rd hearing commenced as a continuation of appellant’s motion for summary judgment on its claim regarding lots 1 and 2. It was intended that, if time permitted, a pretrial conference would also be held. As a result of that pretrial conference and the concession of the parties, it was clear there was no necessity to adduce any further testimony. The parties agreed it was simply a question of preparing the final judgment, filling in the correct figures due on the mortgages, etc., and setting a date for sale.
Accordingly, I am constrained to hold that no reversible error has been demonstrated and the judgment should be affirmed.